## GUARANTY COMPANY v. BOARD OF LIQUIDATION.

The State of Louisiana provided for funding her bonds at reduced rates and on certain terms. A subsequent statute prohibits the funding of all questionable obligations, among which are specially designated those issued in aid of the construction of a certain canal, until, by a final decree of the Supreme Court, "they have been declared legal and valid obligations against the State of Louisiana, and that the same were issued in strict conformity to law, and not in violation of the Constitution of this State, or of the United States; and for a valid consideration." A., a holder of the canal bonds, filed his bill praying for such a decree. The court decided that the statute did not allow them to be funded; they not being valid obligations in the hands of the first taker, and that the latter occupied as good a position as a *bona fide* holder. *Held,* that this not being an action to recover the contents of the bonds, and A. having the same right to enforce payment as he ever possessed, the statute as thus construed does not impair the obligation of any contract.

ERROR to the Supreme Court of the State of Louisiana.

The case is stated in the opinion of the court.

*Mr. William Wirt Howe* and *Mr. William Allen Butler* for the plaintiff in error.

*Mr. Gustave A. Breaux* and *Mr. James Lingan* for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The Federal question which this case involves rests on the following facts: —

On the 8th of March, 1869, the General Assembly of the State of Louisiana, passed act No. 116, of 1869, to authorize an issue of negotiable State bonds to aid in the construction of the Mississippi and Mexican Gulf Ship Canal. Special provision was made in the act for taxation to meet any liability that might be incurred in this way. Bonds to the amount of $480,000 were put out, purporting on their face to have been issued under the authority thus granted, and the New York Guaranty and Indemnity Company, for all that appears to the contrary, became the *bona fide* holder of $250,000 of this amount.

On the 24th of January, 1874, act No. 3, of 1874, was passed, to provide for funding the obligations of the State by an issue, if necessary, of $15,000,000 of "consolidated bonds of the State of Louisiana." To accomplish this a "board of liquidation" was created, with power to execute the new bonds and exchange them for old at the rate of sixty cents of the new for one dollar of the old. If the board rejected any bond offered for exchange, the holder could apply by petition to some proper court for relief, and if on that petition final judgment should be rendered in his favor against the board, he would be entitled, on giving up his old bond, to get one of the new on the terms proposed.

On the 14th of March, in the same year, 1874, act No. 55, of 1874, was passed, which purported to prohibit all State officers from levying or collecting any tax to pay the principal or interest falling due after Jan. 1, 1874, of any of the State debt, unless such levy and collection were specially authorized by some law of the State subsequently adopted, and also prohibiting the setting apart of any funds in the treasury for any such payment. The same law purported to take away from the courts of the State all power or jurisdiction to arrest or impede its operation by *mandamus*, injunction, or otherwise.

On the 17th of March, 1875, act No. 11, of 1875, was passed, to prohibit the board of liquidation from funding, under act

No. 3, of 1874, questionable and doubtful obligations of the State, "until said bonds . . .. shall first, by final decree of the Supreme Court of the State of Louisiana, have been declared legal and valid obligations against the State of Louisiana, and that the same were issued in strict conformity to law, and not in violation of the Constitution of this State or of the United States, and for a valid consideration." In this act the bonds issued in aid of the Mississippi and Mexican Gulf Ship Canal Company were specially designated as questioned and of doubtful validity.

After this act was passed, the New York Guaranty and Indemnity Company, being desirous of funding its bonds under the provisions of act No. 3, filed its petition in the Fifth District Court of the Parish of Orleans, praying that the bonds "be decreed to have been issued in strict conformity to law, and not in violation of the Constitution of this State or of the United States, and that they be declared legal and valid obligations against the State of Louisiana, and issued for a valid consideration." No other judgment was asked than such an one as was necessary under act No. 11, of 1875, to secure the benefit of act No. 3, of 1874, — the funding act. This petition got in due course of procedure to the Supreme Court of the State, and it was there decided that the suit thus begun was not one for the recovery of the money due on the bonds, but was rather in the nature of an inquisition to determine whether the bonds in question were of the class which the State had determined to include in its funding scheme. For this reason the court held that for the purposes of such an inquiry the petitioner, as a *bona fide* holder, occupied no better position than the first taker. Because of this ruling the present writ of error has been brought by the company.

This statement of the case is sufficient, as we think, to show that the question below was not whether, in an action against the State, properly authorized, to recover the amount due upon the bond, act No. 11 permitted the State to prove, as against a *bona fide* holder, that the bond was invalid, but whether the *bona fide* holder of an invalid bond was entitled to the benefit of the scheme of compromise which the State had offered to the holders of its securities that were valid in the hands of the first

taker. Such being the case, no obligation of the original contract has been impaired. Every legal right which the original taker acquired when the bond was put out still remains. The Guaranty Company may enforce all such rights now in any appropriate manner. All the court below has said is, that as between the State and the first taker the bonds were not valid obligations, and that, consequently, they are not entitled to the privileges of the funding laws. The obligation of the State to pay the bonds in money to the *bona fide* holders in accordance with the original promise still remains. The judgment, which has been rendered, and which we are now reviewing, is no bar to any proper proceeding for that purpose. The suit which was authorized, and the suit which was actually begun, only related to the right of the holder to come into the compromise which the State offered to certain classes of its creditors. The judgment is that the bonds do not belong to any of the designated classes. The question here is, not whether, if that inquiry were open to us, we should be of the same opinion, but whether the obligation the State is under to the company has been impaired by act 11, of 1875, as thus construed. We think the State had the right to    when it proposed a scheme for the compromise of its debts, what creditors should be included. That, in our opinion, is all that has been done.

It follows that the Federal question was decided right below, and the judgment is consequently

*Affirmed.*

MR. JUSTICE BLATCHFORD did not sit in this case, nor take any part in deciding it.